UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-81-MOC-DCK

| | |
|---|---|
| DIRECT TECHNOLOGIES INTERNATIONAL, INC., d/b/a DTI, Inc., | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>)<br>) |
| | ) **ORDER** |
| | ) |
| MAXUM INDEMNITY CO., | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER** comes before the Court on a Motion for Judgment on the Pleadings, filed by Plaintiff Direct Technologies International, Inc. ("DTI"). (Doc. No. 16). Also pending is a Motion for Summary Judgment by Defendant Maxum Indemnity Company ("Maxum"). (Doc. No. 22).

This is a dispute regarding insurance coverage. In the underlying action between Hyundai and DTI, Hyundai sued DTI for trademark infringement, alleging that DTI was selling counterfeit Hyundai branded parts. See Hyundai Motor Am., Inc. v. Direct Techs., Inc., No. 3:17cv732 (W.D.N.C.). At issue in this action is whether an insurance policy that DTI purchased from Maxum requires Maxum to defend DTI in the underlying lawsuit with Hyundai, and whether the Maxum policy covers the claims raised in the underlying lawsuit. For the following reasons, the court finds that Maxum owes no coverage and is not obligated to defend or indemnify DTI in the underlying dispute with Hyundai.

1

## I. BACKGROUND

### A. The Underlying Lawsuit by Hyundai Against DTI

Hyundai Motor Company manufactures, sells, and distributes branded products in the United States and around the world. Hyundai Motor America, Inc. is the exclusive distributor of Hyundai-branded parts in the United States.[1] According to Hyundai, the only "genuine" Hyundai-branded parts and accessories are those manufactured by Hyundai-authorized suppliers and then distributed through a Hyundai-authorized chain of distributors to authorized Hyundai dealers.

On December 21, 2017, Hyundai filed a lawsuit against DTI in this Court, and that action is pending. DTI is a Florida corporation with its principal place of business in North Miami Beach, Florida. Hyundai alleges in the lawsuit that DTI is selling unauthorized Hyundai-branded parts of an inferior quality and falsely representing, on its website and elsewhere, that those parts are genuine and/or covered by the Hyundai warranty. The lawsuit centers on DTI's infringement of four of Hyundai's registered trademarks, in which Hyundai alleges that DTI intentionally and knowingly engaged in conduct that infringed on the Hyundai Marks. Hyundai asserts the following seven counts against DTI in the underlying lawsuit: trademark infringement under the Lanham Act; false designation of origin under the Lanham Act; trademark dilution under the Lanham Act; common law common law unfair competition; intentional interference with contractual relations; and a violation of the North Carolina Unfair and Deceptive Trade Practices Act.

### B. The Surplus Lines Insurance Policy Issued by Maxum

---

[1] Both entities will be referred to as "Hyundai."

On May 3, 2013, DTI applied for a surplus lines insurance policy from Maxum.[2] On June 11, 2013, Maxum issued a Binder to DTI. The Binder contained an Intellectual Property Exclusion ("IP Exclusion"). Based on DTI's acceptance of the terms of the Binder, Maxum issued a surplus lines insurance policy to DTI, bearing Policy No. BDG 0066733-01, effective from June 7, 2013, until June 7, 2014. Like the Binder, the policy contained an IP Exclusion. The premium for the entire Commercial General Liability ("GCL") part of the policy was $771. DTI renewed the policy five more times. Each policy is materially identical and has the same IP Exclusion.[3]

The CGL Policy provides, in pertinent part, coverage for, among other things, "personal and advertising injury":

> **SECTION I – COVERAGES …**
>
> **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> 1. **Insuring Agreement**
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. …
>
> 2. **Exclusions**
>
> This insurance does not apply to:

---

[2] A surplus lines policy refers to an insurance policy that protects against a financial risk that is too high for a regular insurance company to assume. According to Maxum, DTI could not obtain coverage from a standard, or "admitted," insurance company. Unlike admitted insurers, surplus lines insurers do not have their policy forms approved by the Office of Insurance Regulation.

[3] Because the analysis is essentially the same under all six policies, Maxum focuses on the first policy, which is when Hyundai alleges the infringement first occurred. Maxum contends that it is entitled to summary judgment under all six policies under which DTI sued it.

3

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period. …

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement". …

**SECTION V – DEFINITIONS …**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement. …

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses: …

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement". …

(Doc. No. 1-1, pp. 25, 31-33).

The Policy contains Form E706 (08/01/2007), the IP Exclusion, which provides:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**… EXCLUSION – INFRINGEMENT OF PATENT, TRADEMARK, SERVICE MARK OR TRADE NAME**

Exclusion i. of COVERAGE B is deleted and replaced with the following:

This insurance does not apply to "personal and advertising injury" arising out of the infringement of patent, trademark, service mark, trade name, trade dress, trade secrets, copyright, title, or slogan, or other intellectual property rights.

(Doc. No. 1-1, pp. 54-55).

In addition, the Policy contains Form E714 (08/01/2007), which provides:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** …

**EXCLUSION – UNFAIR COMPETITION**

The following exclusion is added to COVERAGE B:

This insurance does not apply to "personal and advertising injury" arising out of unfair competition.

(Doc. No. 1-1, p. 55/111).

### C. DTI Files this Action, Seeking Coverage under the Maxum Policy

On February 15, 2019, DTI filed this breach of contract and declaratory judgment action against Maxum, seeking an order from the Court determining DTI's rights under the insurance policy issued by Maxum. In the Complaint, DTI contends that the policy provides coverage, both for defense and indemnity, for damages in the underlying lawsuit by Hyundai against DTI based on "personal and advertising injury" arising out of DTI's business, including DTI's use of Hyundai's advertising idea in DTI's advertisement or DTI's alleged infringing upon Hyundai's

5

copyright, trade dress, or slogan in DTI's advertisements. Maxum has refused to defend or indemnify DTI in the underlying suit. DTI filed a motion for judgment on the pleadings on May 24, 2019. Maxum filed a motion for summary judgment on June 28, 2019, arguing that, under the policy's exclusions, it is not required to defend or indemnify DTI in the underlying action.

## II.     STANDARD OF REVIEW

As noted, DTI has filed a motion for judgment on the pleadings, and Maxum has filed a motion for summary judgment.

A Rule 12(c) motion for judgment on the pleadings is subject to the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Portales Place Prop., LLC v. Guess, No. 3:08CV143, 2009 WL 112847, at *1 (W.D.N.C. Jan. 15, 2009) (citing Burbach Broad. Co. v. Elins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002)). When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all well-pleaded allegations and view the complaint in the light most favorable to the nonmoving party. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[ ] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Thus, a "complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and that a recovery is very remote and unlikely." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) (internal quotation marks and citation omitted). However, the Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. LLP, 213 F.3d 175, 180 (4th Cir. 2000).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

North Carolina follows the lex loci contractus doctrine, which provides that the place where the contract was made governs its interpretation. Beal v. Coastal Carriers, Inc., 794

7

S.E.2d 882, 893 (N.C. App. Ct. 2016). But choice of law is "necessary … only if the relevant laws of the different states lead to different outcomes," so that where the laws "do not so conflict, the choice is immaterial, and the law of the forum [] governs." Perini/Tompkins Joint Venture v. ACE Am. Ins. Co., 738 F.3d 95, 101 (4th Cir. 2013). Here, the parties appear to agree the contract was entered into in Florida. The Court notes that there is no conflict, however, between Florida and North Carolina law regarding the plain language of an insurance policy. That is, "[a] court must enforce the contract as the parties have made it and may not, under the guise of interpreting an ambiguous provision, remake the contract and impose liability upon the company which it did not assume and for which the policyholder did not pay." Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 172 S.E.2d 518, 522 (N.C. 1970). For this reason, a court's inquiry always "begins with a review of the plain language of the insurance policy as bargained for by the parties." Koikos v. Travelers Ins. Co., 849 So. 2d 263, 266 (Fla. 2003).

In applying these principles, courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." Swire Pac. Holdings v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005).

### I. THE POLICY'S INTELLECTUAL PROPERTY EXCLUSION

The insured DTI bears the burden of proving coverage under the Maxum policy, and the insurer Maxum has the burden of proving an exclusion to coverage. Great Am. Assurance Co. v. Elliott, 846 F. Supp. 2d 1258, 1261 (M.D. Fla. 2012); Erie Ins. Exch. v. First United Methodist Church, 690 F. Supp. 2d 410, 413 (W.D.N.C. 2010). DTI concedes that the only possible

"offense" under "adverting injury" coverage is the "use of another's advertising idea in your advertisement," and "infringing upon another's copyright, trade dress, or slogan in your advertisement." (Doc. No. 25 at p. 5). Assuming that the Complaint in the underlying lawsuit between Hyundai and DTI alleges "personal and advertising injury," the Court finds that the IP Exclusion unambiguously bars coverage.[4]

Construing the policy's language according to its plain terms, there is no coverage for any claim or suit "arising out of" the infringement of any "patent," "trademark," "service mark," "trade name," "trade dress," "trade secrets," "copyright," "title," "slogan," or any "other intellectual property rights." Here, every claim by Hyundai in the Complaint is based on DTI's infringement of the registered Hyundai trademarks. (Doc. No. 1-7 at ¶¶ 18, 49, 62, 69, 76, 82, 88, 94, 98, 105). Consequently, the IP Exclusion unequivocally bars coverage for the underlying action. Accord Superformance Intl., Inc. v. Hartford Cas. Ins. Co., 332 F.3d 215, 223 (4th Cir. 2003) (no coverage under intellectual property exclusion for trademark infringement, trademark dilution, and unfair competition claims); Land's End at Sunset Beach Cmty. Ass'n, Inc. v. Aspen Specialty Ins. Co., 289 F. Supp. 3d 1259, 1269 (M.D. Fla. 2017), aff'd, 745 Fed. Appx. 314 (11th Cir. 2018) (no coverage under intellectual property exclusion for trademark infringement, false designation of origin, and unfair competition); Catlin Specialty Ins. Co. v. Tegol, Inc., No. 3:14-CV-00607, 2017 WL 252290, at *10 (W.D.N.C. Jan. 19, 2017) (no coverage under intellectual property exclusion for trademark infringement, trademark dilution,

---

[4] Maxum argues in its Reply that the underlying lawsuit between Hyundai and DTI does not allege "advertising injury." The Court will assume, for the purpose of the parties' motions, that the underlying lawsuit between Hyundai and DTI does allege "advertising injury." Nevertheless, as the Court explains, the IP Exclusion applies so that Maxum is not required to defend or indemnify DTI.

9

unfair competition, and false designation of origin); Selective Way Ins. Co. v. Crawl Space Door Sys., 162 F. Supp. 3d 547, 555-57 (E.D. Va. 2016) (no coverage under intellectual property exclusion for trademark infringement and unfair competition claims, where trademark infringement was an intertwined component of claims); Power Corp. v. Amerisure Ins. Co., No. 2:12-cv-192, 2013 WL 4523490, at **5-7 (M.D. Fla. Aug. 26, 2013) (no coverage under intellectual property exclusion for trademark infringement, trademark dilution, unfair competition, and false designation of origin).

In response to Maxum's summary judgment motion, DTI first concedes that a choice of law inquiry is unnecessary if "there is no conflict between North Carolina and Florida insurance law." (Doc. No. 25 at p. 6). DTI suggests, nonetheless, that North Carolina law "may conflict" with Florida law regarding illusoriness. DTI then goes on to argue that the policy is unenforceable because the IP Exclusion "swallows up" the insuring provision, rendering the exclusionary clause a nullity.[5] For the following reasons, the Court finds that the IP Exclusion does not render the insurance policy coverage illusory.

First, the Court notes that both North Carolina and Florida law is essentially the same

---

[5] Significantly, DTI does not dispute that, unless the Court finds that the IP Exclusion renders the insurance policy illusory, the IP Exclusion provides for no coverage in DTI's underlying dispute with Hyundai. In its summary judgment motion, Maxum contends that other exclusion provisions also eliminate coverage, including the "failure to conform" exclusion, the "unfair competition" exclusion, the "knowing violation of rights of another" exclusion, the "material published with knowledge of falsity" exclusion, and the "prior publication" exclusion as to every policy except for the first. Because the Court finds that the IP exclusion bars coverage, the Court does not address these other bases for exclusion. The Court further notes that DTI concedes in its response to Maxum's summary judgment motion that there is no coverage under any policy issued after the first policy. See, e.g., Scottsdale Ins. Co. v. Outrigger Beach Club Condo. Ass'n, 304 F. Supp. 3d 1208, 1213-14 (M.D. Fla. 2018) (no coverage under identical exclusion because the events "potentially causing injury" did not occur during the policy period).

regarding illusoriness. Therefore, there is no conflict of law regarding illusoriness. In any event, the exclusions in the policy do not render the policy illusory. Here, the IP Exclusion does not eliminate "all, or virtually all – coverage in a policy." In fact, the IP Exclusion does not even purport to affect coverage under Coverages A and C for "bodily injury," "property damage," or "medical payments." Accord Interline Brands, Inc. v. Chartis Specialty Ins. Co., 749 F.3d 962, 967 (11th Cir. 2014) (noting that "[e]ven with the broad Exclusion, the policy still contains extensive coverage"). Even regarding Coverage B, the IP Exclusion does not affect a vast majority of "offenses" under the "personal and advertising injury" coverage. It merely eliminates coverage for specific advertising activities involving intellectual property infringement, which the parties specifically negotiated for in exchange for the nominal premium that DTI paid. In other words, the coverage grant of "personal and advertising injury" is not swallowed by the IP Exclusion.

In response to Maxum's summary judgment motion, DTI claims that the policy contains "insuring provisions that specifically grant coverage" for "use of another's advertising idea" and "trade dress infringement." (Doc. No. 25, p. 9). DTI is incorrect. Those are "offenses" and not coverage grants. There are no "insuring provisions" for "use of another's advertising idea" or for "trade dress infringement." Rather, the "insuring provision" is for "personal and advertising injury." As noted, the insuring provision under Coverage B specifically provides as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

(Doc. No. 1-1, p. 25, emphasis added).

11

The insuring provisions in the cases cited by DTI are distinguishable from the insuring provision in this case. In the cases cited by DTI, the policy exclusion "swallowed up" the entire "insuring provision." See, e.g., Purrelli v. State Farm Fire & Cas. Co., 698 So. 2d 618, 620 (Fla. 2d DCA 1997) (where the policy's "insuring provision" provided coverage for "intentional torts," yet excluded coverage for "intended acts," thus "swallow[ing] up" the entire insuring grant for intentional torts); Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11582 v. Waveblast Watersports, Inc., 80 F. Supp. 3d 1311, 1319 (S.D. Fla. 2015) (where a watercraft exclusion completely negated the entire insuring grant for all of the "parasail activities and operations" coverage, enforcing the exclusion would render the policy illusory); Warwick Corp. v. Turetsky, 227 So. 3d 621, 625 (Fla. 4th DCA 2017) ("[W]here a limitation on coverage does not 'completely swallow[] the insuring provision,' the policy is not illusory.").

Here, unlike in the cases cited by Plaintiff, the "insuring provision" for "personal and advertising injury" remains intact, despite application of the IP Exclusion to some discrete offenses, which were specifically negotiated. Moreover, the narrower subset of "advertising injury" is not "swallowed up" by the IP Exclusion. In other words, numerous personal injury and advertising activities are still covered. Among others, the policy still provides broad "advertising injury" coverage for claims including defamation, libel, or slander in an advertisement. At most, the IP Exclusion eliminates some claims, which was Maxum's right based on the premium charged. Travelers Prop. Cas. Co. of Am. v. Salt 'N Blue LLC, 731 Fed. Appx. 920, 925 (11th Cir. 2018) (applying Florida law) (exclusion that eliminates "coverage for a subset of claims that would ordinarily fall within the policy's insuring provision" is enforceable as a matter of law); Zucker for Bank United Fin. Corp. v. U.S. Specialty Ins. Co., 856 F.3d 1343, 1352 (11th Cir. 2017) (applying Florida law) (same); see also Transcon. Ins. Co. v. Jim Black &

12

Assocs., Inc., 888 So. 2d 671, 677-78 (Fla. 2nd DCA 2004) (explaining distinctions between various coverage forms for "advertising injury").

In sum, for the reasons stated herein, Maxum is entitled to summary judgment, as the insurance policy at issue's exclusions apply to preclude Maxum from defending or indemnifying DTI in the underlying lawsuit between Hyundai and DTI.[6]

## IV. CONCLUSION

In sum, for the reasons stated herein, Defendant's summary judgment motion is granted. To this extent, Plaintiff's Motion for Judgment on the Pleadings is denied.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 22), is **GRANTED**, and Plaintiff's Motion for Judgment on the Pleadings, (Doc. No. 16), is **DENIED**.

2. This action is dismissed with prejudice.

3. The Clerk is respectfully instructed to terminate this action.

---

[6] In opposing Maxum's summary judgment motion, DTI argues that, even if the Court determines that the policy does not cover the claims raised here, Maxum still has a duty to defend Plaintiff. The Court does not agree. The duty to defend is broader than the duty to indemnify. Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC, 692 S.E.2d 605, 610-11 (N.C. 2010) (explaining that the duty to defend is broader than the duty to indemnify); Keen v. Florida Sheriffs' Self-Insurance Fund, 962 So.2d 1021, 1024 (Fla. 4th DCA 2007) ("A liability insurance carrier must defend the insured only when the initial pleadings fairly bring the case within the scope of coverage. However, if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend.") (internal quotations and citations omitted). Accordingly, if there is no duty to defend, there is also no duty to indemnify. North Carolina Farm Bureau Mut. v. Phillips, 805 S.E.2d 362, 366 (N.C. App. Ct. 2017) ("Because the duty to defend may be broader than the duty to indemnify we address the duty to defend because if it fails, so too does the duty to indemnify."). Here, even taking all of the factual allegations in the Complaint in the underlying action as true, this Court finds that the alleged injury is not covered by the policy based on the IP Exclusion.

13

Signed: November 26, 2019

Max O. Cogburn Jr
United States District Judge